*J. L. Mayson, W. D. Ellis Jr.,* contra.

---

### 5948.  BROWN *v.* CITY OF COVINGTON.

The evidence was not sufficient to support the judgment of the municipal court, finding the defendant guilty of the charge of keeping for unlawful sale intoxicating liquors within the corporate limits of the City of Covington.
DECIDED NOVEMBER 17, 1914.

Certiorari; from Newton superior court—Judge C. S. Reid. July 29, 1914.

*Rogers & Knox,* for plaintiff in error.

*C. C. King,* contra.

WADE, J. Under a municipal ordinance declaring it to be unlawful for any person to keep for the purpose of sale, in the city of Covington, any wine, rum, brandy, whisky, beer, or other spirituous, vinous, or malt liquors, Caroline Brown was tried and convicted by the mayor. Her petition for certiorari was overruled by the judge of the superior court, and she excepted. The only point raised by the petition for certiorari is that the verdict was contrary to law, because not sustained by the evidence.

The evidence in behalf of the city, as set out in the mayor's answer to the certiorari, was that of two policemen, one of whom testified, that on May 2, 1914, he started to go to the defendant's house in Covington, with the other witness, and "when he came in sight of the house he saw quite a number of men near the house, also some men on the veranda, and several men who seemed to be intoxicated, coming out of defendant's house;" that a short distance from the house the witness and his companion met and passed the defendant, and when they reached her house all the men they had previously observed had left, except one John Evans, who was still seated on the veranda, but he immediately left; that the house was a two-room house, occupied by two tenants, the defendant in one part, and her daughter, Lucy Gill, in the other part; that he found the defendant's room locked and a lamp burning therein; that Lucy Gill's room was open, and when the witness requested her to open the defendant's room she replied that she could not, since her mother had the only key of the room; that the witness and the other policeman withdrew to a distance of 150 feet from the house, and, after waiting some time, the defendant returned to the house and threw a number of empty bottles into an adjacent field, and then pulled some bulky object from the house into the yard, locked the door of the house, called one George Gill from another house, a short distance away, and that when George arrived and took a seat in a swing on the veranda of the defendant's house, the defendant went away; that thereupon the officers went in search of the object they had seen the defendant remove from the house, and found under the veranda a zinc tub partly filled with ice, con-

taining eight bottles of beer, and a one-gallon glass jar with about three pints of whisky therein. This witness stated that he was positive that the object he saw the defendant take from the house was the zinc tub and its contents. The tub and its contents were placed in evidence, and it was admitted that the contents were beer and whisky. The other police officer "testified to all the statements made by his associate as being in accordance with what he saw," but stated, on cross-examination, that he was not near enough to say positively that it was the defendant who removed the tub from the house, but judged it was she, from her size, and from her voice when she called George Gill, and further stated that he knew the defendant well and was confident it was she. Lucy Gill testified that it was she, and not the defendant, who called George Gill; and George Gill testified that he was called by Lucy, and not by the defendant, when he went to the house. The defendant admitted passing the two policemen on the street, but denied that she called George Gill or that she had any knowledge of the tub or its contents, and asserted that she spent the night away from her house on May 2. This is in substance, and almost verbatim, the evidence as set out in the answer to the certiorari; and upon this evidence the defendant was convicted by the mayor, and a fine of $200 and costs imposed upon her, or, in lieu thereof, a term of four months in the city chain-gang.

It is unnecessary to say that the rule is well established that this court can not set aside a verdict or judgment of guilty on the general grounds alone, if there is any evidence to authorize the conviction. It is equally well settled, however, that where a conviction depends upon circumstantial evidence entirely, the evidence must be not only sufficient to sustain the hypothesis of the guilt of the accused, but inconsistent with any reasonable hypothesis of innocence on the part of the accused. In the case under consideration there is nothing to show whether the men seen by the witnesses in the street near the house occupied in part by the defendant had in fact been visiting the defendant or her daughter, who occupied the other portion of the house; nor does it appear that these men or any of them had actually been drinking spirituous, malt, or vinous liquors in the room of the defendant, or even in the room occupied by her daughter; for while the witnesses testified that they saw "several men who seemed to be intoxicated, coming out

of defendant's house," their evidence does not suggest whether these men became intoxicated in her house or were already intoxicated with some beverage obtained elsewhere before they entered her house; in fact these witnesses testified only that the men "seemed to be intoxicated," and the witnesses did not even definitely assert that they came from the part of the house occupied by and under the control of the defendant. Disregarding entirely the evidence in behalf of the defendant, and taking the testimony for the city, which showed that she had thrown away a number of empty bottles, and had placed under the house occupied by her and her daughter a zinc tub, partly filled with ice and containing eight bottles of beer and three pints of whisky, this could not of itself do more than raise a bare suspicion that the defendant had the beer and whisky in her possession for the purpose of illegal sale. In view of the number of men seen departing from the house and the small amount of beer and whisky discovered in the zinc tub, it is quite as reasonable to suppose that the defendant (if she was present at all) and the other persons seen were simply enjoying a convivial evening, either as the guests of her daughter, or possibly participating in a drinking-bout, where one or more of these persons furnished the stimulants without monetary or other consideration. It would be a dangerous rule to lay down that one found in possession of eight bottles of beer on ice and three pints of whisky at his house, where several people were gathered and where some appeared to be intoxicated, could for that reason be convicted of storing liquors for the purpose of illegal sale. The storage itself at the home of defendant was certainly no crime against either the city or the State; and, so far as the city ordinance is concerned, it is necessary that it should appear from the evidence, or from the circumstances surrounding the storage or keeping, that the defendant had and kept the intoxicants in question for the purpose of unlawful sale. As this court and the Supreme Court have both held on more than one occasion, proof of a single sale might have been sufficient to establish the unlawful purpose of the storing or keeping of the liquors; and it has been held by this court that slight evidence showing the keeping for the purpose of sale is all that is required to sustain a conviction in a case of this character; but neither this court nor any other court has ever recognized the doctrine that the purpose entertained by a defendant in storing and

keeping intoxicating liquors can be arrived at or determined without any evidence whatever tending to show what such actual purpose or intent may have been. In other words, the rule of evidence which obtains in a prosecution for a violation of an ordinance against the illegal storage of liquor, or even for violations of the State prohibition law, is not different from that which applies in prosecutions for other and more serious offenses against society.

"It is difficult for courts to detect all the ingenious devices and tricks employed by those who violate the liquor laws, but in the trying of these cases well-established rules of evidence must control, and this court does not feel justified in permitting a verdict to stand which rests solely upon a bare suspicion of guilt, and which presents a theory as consistent with innocence as with guilt." *Davis* v. *State,* 13 *Ga. App.* 142, 144 (78 S. E. 866). "In every court of this State, including the recorder's court of a municipality, parties on trial are entitled to the presumption of innocence, and should not be convicted upon merely suspicious circumstances. When circumstantial evidence alone is relied on to convict, the circumstances should be sufficient to exclude every other reasonable hypothesis than that of the guilt of the accused; and this is true even though the charge be that of violating the prohibition law. The rule of evidence is elementary and protects all persons in any court, on trial for any offense, either against the laws of the State or against the ordinances of a municipality." *Smith* v. *Atlanta,* 12 *Ga. App.* 816, 817 (78 S. E. 472). It certainly can not be successfully maintained that in a prosecution for violation of laws or ordinances other than liquor laws, where the purpose of the defendant is vitally important, evidence as unsatisfactory as the evidence in this case would be sufficient to support a conviction.

While it may be true that the defendant was in fact guilty of the charge preferred against her, and because of the insufficiency of the evidence may eventually go unwhipped of justice, yet the law of the land must preserve the rights of every person, no matter how high or low, how worthy or unworthy, and it is not within the power of the courts to establish different rules of evidence or to attach different and varying values to testimony, merely on account of the nature of the offense or the character of the offender. Before any citizen can be deprived of liberty or mulcted for a fine there must be evidence sufficient to support the inference of guilt,

and, in cases depending upon circumstantial evidence only, sufficient to exclude any other reasonable hypothesis than that of the guilt of the accused. Viewed in this light, the evidence was not sufficient to sustain the conviction, and the judge of the superior court erred in overruling the certiorari.

*Judgment reversed. Broyles, J., not presiding.*