## 7601. SANGFIELD v. THE STATE.

The circumstantial evidence as to the sale of intoxicating liquors by the accused was sufficient to exclude every other reasonable hypothesis than that of guilt.

DECIDED OCTOBER 18, 1916.

Indictment for sale of liquor; from Webster superior court—Judge Littlejohn. May 30, 1916.

*J. F. Souter, J. R. Lunsford,* for plaintiff in error.

*J. R. Williams, solicitor-general,* contra.

WADE, C. J. The indictment charged the defendant with the offense of selling intoxicating liquors, and also with keeping the same at her place of business. At the trial the State elected to proceed only upon the count charging the sale of intoxicating liquors, and the jury found the defendant guilty. A motion for a new trial was made upon the general grounds only; and it is insisted that the evidence against the accused, which was altogether circumstantial, was not sufficient to establish her guilt to the exclusion of every other reasonable hypothesis. The indictment was preferred at the April term of Webster superior court, 1916, and it appears from the testimony, that "since the first of the year" 1916 the defendant lived in the little town of Weston in that county, in a house over which she apparently exercised exclusive control, and that she was without any known occupation or visible and lawful means of support. The sheriff of Webster county testified that he went to the house of the defendant in Weston on April 1, 1916, to execute a search warrant, and found the defendant there; that he requested her to deliver to him the whisky she had in her house and she said there was none there, whereupon the witness "felt under the bed mattress where she was sitting and found one quart of whisky right under her;" that the defendant then told him that "was all there was in the house," but witness discovered "two or three more quarts and pieces of quarts" over the window, whereupon the defendant told him that *this* was all the whisky in the house and "denied having any more;" that the witness then went into the kitchen and "looked in a wood-box that was filled with chips and splinters, and scratched in them and found eleven pints of whisky;" that he found altogether two full quarts, two quart bottles partly full, and eleven pints, after the positive denial of the defendant that there was any whisky what-

ever in her house. There was testimony from two witnesses that they had frequently seen both negroes and white people go to the house of the defendant sober, and return therefrom wholly or partially intoxicated; that crowds would often gather at her house, usually from Friday evening until Monday morning, and sometimes laugh and talk nearly all night, and become quite boisterous. One of these witnesses further testified that he had seen automobiles stop at the defendant's house and leave some persons there who would wait until the automobiles returned; that he had "seen both black and white, did not know the whites, they seemed to live away from there; they seemed to be sober when they went, and looked like they were drinking when they returned," and that on one occasion he had stopped a negro coming from the defendant's house, to get the negro to help him unload a wagon, and the negro "was so drunk that he fell down twice while helping." A witness testified that he had met in the road people coming from the defendant's house and "smelt whisky on their breath," and that the same people appeared to be sober when going to her house. Another witness said that he frequently saw negroes going to and from the defendant's house during the day, and had seen them coming away with something under their arms like a sack, and some of them looked as if they had been drinking; that she "had negro men and women going in her house and out like bees." Still another witness testified that on April 1, 1916, before the defendant was arrested by the sheriff, he passed her house and saw a man behind the house drinking from a bottle, which the man slipped into his pocket when he saw the witness.

It is not reasonable to suppose that the defendant kept open a dispensary at her house for the free distribution of intoxicating liquors; especially in view of the testimony as to the large number of people who frequented her house, and whose thirst for intoxicants was there apparently gratified. Even had the defendant wished to charitably bestow liquid refreshments upon the great numbers of people who visited her from day to day, and the crowds that assembled at her house at the close of every week, the evidence showing that she had no apparent occupation or visible means of support would preclude this inference and compel the conclusion that the defendant did not part with whisky without receiving therefor ample consideration, sufficient at least to replenish her

stock of intoxicants from time to time. The fact, too, that white men frequented her house, going there sober and coming away intoxicated, is very significant, for while not directly appearing, it may be reasonably inferred from the record that the defendant is a negress, and it can hardly be supposed that the white visitors, so often seen at her home, who went there not only singly but also in groups or crowds, were merely paying social visits, or, in the absence of evidence that she was a lewd woman, that both whites and blacks thronged her home for baser reasons. In fact, the frequent assemblage of so many whites and negroes at her house could not be rationally explained on any other theory than that she kept in her possession some commodity or thing for which her visitors had a common desire, and which in some manner they procured from her; and the further fact that both whites and negroes were seen, not once but many times, to go to her house sober and come away drunk, smelling of whisky, very clearly and convincingly indicates what was the particular thing that they desired and obtained from her. In addition to these circumstances, the further circumstances that she thought it necessary to deny having any whisky whatever in her possession, and that nevertheless the sheriff immediately thereafter found a considerable amount carefully secreted in different places about her house (eleven pint bottles, convenient for sale, being included in the quantity discovered), tend to show that the drunken men who were seen coming from her house obtained the means of intoxication there, with her knowledge and assistance.

Unless we adopt the surmise that the defendant gratuitously gave away whisky to strangers coming in crowds to her domicile, many·coming in automobiles from a distance, who must have been unknown to her, the only reasonable conclusion we can reach is that she in fact sold whisky in the county of Webster during the period between the "first of the year" 1916, and the finding of the indictment. It is true the conviction depended altogether upon circumstantial evidence, but the circumstances in proof exclude every other reasonable hypothesis than that the defendant sold whisky within two years prior to the finding of the bill of indictment.

In the case of *Brown* v. *Covington,* 15 *Ga. App.* 421 (83 S. E.

426), in which this court held the testimony insufficient to ex-clude every other reasonable hypothesis than that of the guilt of the accused, only one occasion was testified about, and it did not appear that the men seen coming away from the defendant's home in an apparently intoxicated condition had visited the house more than once; and, as was said in the opinion, the "evidence does not suggest whether these men became intoxicated in her house or were already intoxicated with some beverage obtained elsewhere before they entered her house," and the witnesses did not say that the apparently intoxicated persons came from the part of the house occupied by and under the control of the defendant. Here the visitations were frequent, the men went to the house apparently sober and came away drunk, smelling of whisky, and no reason or explanation appears why the house of the defendant should have been so attractive as to draw both negroes and whites under its roof on terms of temporary equality at least, unless the unlawful sale of whisky was in fact the all-sufficient and compelling force binding together these incongruous racial elements. It was for the jury to say whether the circumstances convinced them beyond a *reasonable* hypothesis that the defendant did in fact sell intoxicating liquors, and this question they determined in the affirmative. The able, careful, and impartial judge who tried the case declined to set aside their verdict, and since we are of the opinion that it was the only reasonable and intelligent verdict that could have been reached under the circumstances in proof, the judgment overruling the motion for a new trial is      *Affirmed.*